**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| **PATRICK M. DUNCAN,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 09-CV-0900-MJR** |
| | ) | |
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Respondent.** | ) | |

## <u>MEMORANDUM AND ORDER</u>

**REAGAN, District Judge:**

    **I.**    <u>**Introduction and Background**</u>

       Before the Court is Patrick Duncan's October 2009 petition to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255. Analysis of the petition begins with an overview of the procedural history of the underlying criminal case, *United States v. Duncan* (Case No. 05-cr-30025-MJR).

       On September 2, 2005, Duncan pleaded "straight up" to a three-count superseding indictment which charged him with conspiracy to transport counterfeit checks (Count 1); conspiracy to commit wire fraud (Count 2); and violation of the National Stolen Property Act (Count 3). Count 4, a forfeiture count, was dismissed by the Government. The charges pertained to an identity theft and check kiting scam. Duncan, who is a repeat offender, produced bogus checks which were cashed by several individuals who were prosecuted in separately docketed cases and who subsequently became cooperating

Government witnesses.  Duncan was represented in this action by retained counsel of his choosing, Clinton A. Wright.

The undersigned Judge sentenced Duncan to 96 months' imprisonment, 3 years' supervised release, a special assessment of $300.00, and restitution of $177,726.92. Judgment was entered accordingly on March 1, 2006.  Duncan appealed the restitution portion of his sentence to the Seventh Circuit Court of Appeals, and the appeals court affirmed the judgment of the district court.  *See United States v. Duncan*, **Case No. 06-1614 (7th Cir., April 9, 2008)**.  Duncan sought, but was denied, a writ of certiorari to the United States Supreme Court.

In October 2009, Duncan timely moved to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255.  The motion survived threshold review in April 2010, and the Court set a briefing schedule.  The motion became ripe with the filing of Duncan's reply brief on June 28, 2010.  For the reasons stated below, the Court denies Duncan's request for relief and dismisses his § 2255 petition.

An evidentiary hearing is not warranted.   Five of the six claims asserted by Duncan involve ineffective assistance of counsel.  Such claims often require an evidentiary hearing, "because they frequently allege facts that the record does not fully disclose." *Osagiede v. United States*, **543 F.3d 399, 408 (7th Cir. 2008).**  But the issues raised here can be resolved on the existing record, which conclusively demonstrates that Duncan is entitled to no relief.  *See* **Rule 8(a) of** RULES GOVERNING SECTION 2255 PROCEEDINGS; *Almonacid v. United States*, **476 F.3d 518, 521 (7th Cir.),** *cert. denied,* **551 U.S. 1132 (2007);** *Gallo-*

*Vasquez v. United States*, **402 F.3d 793, 797 (7th Cir. 2005);** *Galbraith v. United States*, **313 F.3d 1001, 1010 (7th Cir. 2002).** Stated another way, Duncan has not alleged facts that, if proven, would entitle him to relief. *See Sandoval v. United States*, **574 F.3d 847, 850 (7th Cir. 2009).**

    II.    <u>Analysis of § 2255 Petition</u>

        A.  <u>Applicable Legal Standards</u>

        28 U.S.C. § 2255 authorizes a federal prisoner to ask the court which sentenced him to vacate, set aside, or correct his sentence, if "the sentence was imposed in violation of the Constitution or laws of the United States, ... the court was without jurisdiction to impose such sentence, or ... the sentence was in excess of the maximum authorized by law."

        Relief under § 2255 is limited. Unlike a direct appeal, in which a defendant may complain of nearly any error, § 2255 proceedings may be used only to correct errors that vitiate the sentencing court's jurisdiction or are otherwise of constitutional magnitude. *See, e.g., Corcoran v. Sullivan*, **112 F.3d 836, 837 (7th Cir. 1997)(§ 2255 relief is available only to correct "fundamental errors in the criminal process").** Section 2255 has been described as "the federal-prisoner substitute for habeas corpus." *United States v. Boyd*, **591 F.3d 953, 955 (7th Cir. 2010).** *Accord Washington v. Smith*, **564 F.3d 1350, 1351 (7th Cir. 2009)(referring to a § 2255 petition as "the federal prisoner's equivalent to a § 2254 petition attacking a criminal judgment entered by a state court").**

        As the Seventh Circuit has declared, § 2255 relief "is appropriate only for an

error of law that is jurisdictional, constitutional, or constitutes a fundamental defect which inherently results in a complete miscarriage of justice." **Harris v. United States, 366 F.3d 593, 594 (7th Cir. 2004).   Accord Prewitt v. United States, 83 F.3d 812, 816 (7th Cir. 1996)("relief under 28 U.S.C. § 2255 is reserved for extraordinary situations").** And § 2255 cannot be used as a substitute for a direct appeal or to re-litigate issues already raised on direct appeal. **Coleman v. United States, 318 F.3d 754, 760 (7th Cir.), cert. denied, 540 U.S. 926 (2003).   Accord Sandoval, 574 F.3d at 850 ("claims cannot be raised for the first time in a § 2255 motion if they could have been raised at trial or on direct appeal").**

In the case at bar, Duncan tenders six grounds for § 2255 relief, five of which are premised on ineffective assistance of counsel:

> (1)    his lawyer failed to insist upon proof of an overt act as required to prove a wire fraud conspiracy under 18 U.S.C. § 1349;

> (2)    his lawyer failed to require the Government to describe the particular checks that were actually transported in interstate commerce;

> (3)    his lawyer failed to advise him of a plea offer from the Government which caused the Government to rescind an offer to recommend an 84-month sentence;

> (4)    his right to due process was violated where he was not the most culpable member of the conspiracy and the prosecution should have used him to cooperate against the more culpable member, Calien McPike, instead of using McPike against him;

> (5)    his lawyer failed to assist him in representing his interest in his personal property which was not purchased with proceeds from any violation of federal law; and

(6)    his lawyer was ineffective in failing to reach an agreement with the prosecution regarding the amount of restitution to be ordered.

The Sixth Amendment to the United States Constitution accords criminal defendants the right to effective assistance of counsel. ***Wyatt v. United States*, 574 F.3d 455, 457 (7th Cir. 2009),** *cert. denied,* **130 S.Ct. 1925 (March 22, 2010) (citing** *Watson v. Anglin,* **560 F.3d 687, 690 (7th Cir. 2009).** To prevail on a claim of ineffective assistance, a defendant must prove two things (a) that his attorney's performance was objectively unreasonable and (b) that he (the defendant/petitioner) suffered prejudiced as a result of this constitutionally deficient performance. ***Wyatt,* 574 F.3d at 457-58;** *United States v. Peleti,* **576 F.3d 377, 383 (7th Cir. 2009);** *Strickland v. Washington,* **466 U.S. 668, 687 (1984).**

This first requirement of this dual test is referred to as "the performance prong" and the second as the "prejudice prong." As to the performance prong, a § 2255 petitioner must overcome a "strong presumption that [his] counsel's conduct falls within the wide range of reasonable professional assistance." ***Wyatt,* 574 F.3d at 458 (quoting** *Strickland,* **466 U.S. at 687-88.** He must establish the specific acts or omissions he claims constitute ineffective assistance, and the Court then assesses whether those acts/omissions are outside the scope of reasonable legal assistance. ***Id. See also United States v. Acox,* 595 F.3d 729, 734 (7th Cir. 2010) (citing** *Williams v. Lemmon,* **557 F.3d 534 (7th Cir. 2009)(Deciding "whether counsel's services were beneath the constitutional floor requires consideration of what counsel did, as well as what he omitted.").**

Evaluation of counsel's performance is highly deferential. The reviewing

court presumes reasonable judgment by counsel and must not second-guess counsel's strategic choices or "tactical decisions." *Valenzuela v. United States*, 261 F.3d 694, 699 (7th Cir. 2003). Moreover, the court must "consider the reasonableness of counsel's conduct in the context of the case as a whole, viewed at the time of the conduct, ... [applying] a strong presumption that any decisions by counsel fall within a wide range of reasonable trial strategies." *Id.*

As to the prejudice prong, the defendant/petitioner must demonstrate a reasonable probability that, *but for counsel's errors*, the result of the proceeding would have been different. *United States v. McKee*, 598 F.3d 374, 384 (7th Cir. 2010). The inquiry focuses on whether the counsel's errors rendered the proceedings "fundamentally unfair or unreliable." *Valenzuela*, 261 F.3d at 699. As explained below, all five of Duncan's ineffective assistance claims fail the *Strickland* test.

**B.**  **Ineffective assistance of counsel - Count 2, Conspiracy to Commit Wire Fraud**

Duncan claims that Attorney Wright was ineffective in failing to advise him of the elements of conspiracy to commit wire fraud and that he should have been told that 18 U.S.C. § 1349 requires proof of an overt act.[1]  In Duncan's reply brief, he concedes that no overt act was needed to convict him of violation § 1349. However, according to Duncan, the "overt act" claim was not the only claim he raised regarding Count 2. Duncan claims

---

[1]18 U.S.C. § 1349 provides, "Any person who attempts or conspires to commit any offense under this chapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy."

that his lawyer should have objected to the Government's use of "reasonably foreseeable" as the standard for wire fraud because he was charged with wire fraud conspiracy, not "*actual* wire fraud." He also claims that the Government failed to make any claim that (1) the conspiracy to commit wire fraud as charged in the indictment existed and (2) he knowingly became a member of the conspiracy with the intention to further the conspiracy.

Duncan's arguments fail for a number of reasons, not the least of which is that "reasonably foreseeable" is an element of both wire fraud and conspiracy to commit wire fraud. **See, e.g., United States v. Soteras, 770 F.2d 641, 645 (7th Cir. 1985) ("In order to prove conspiracy to commit the offense of wire fraud, the government must establish that a defendant agreed to participate in a scheme to defraud in which it was reasonably foreseeable that an interstate wire facility would be used in furtherance of the scheme." (citations omitted); *United States v. Ratliff-White* 493 F.3d 812, 817 (7th Cir. 2007) (The third element of wire fraud is causing "a wire transmission by acting with the knowledge that use of the wires will occur in the ordinary course of business or where use of the wires can be reasonably foreseen.") (citation omitted)**.

Second, Duncan's assertion that the Government failed to claim the elements of conspiracy to commit wire fraud is belied by the entire record of this case, from indictment to the sentencing hearing. The scheme by which Duncan, through his criminal associates, defrauded multiple businesses by means of counterfeit checks linked to bogus identification documents is carefully and extensively set forth in the indictment. At the change of plea hearing, Duncan's factual stipulation (Doc. 4-5), which details the

conspiracy and his role in it, was read into the record. Prior to its reading, the Court

conducted the following colloquy:

> Q: He (AUSA Bruce Reppert) referenced the factual stipulation. I have in my hand a two page document, nine paragraphs in it. Can you confirm your signature is on page two of the document?
>
> A: Yes, sir.
>
> Q: Now paragraph six is stricken out and you have initialed that, correct?
>
> A: Yes.
>
> Q: So you're not agreeing that the scheme involved a sophisticated means?
>
> A: Correct.
>
> Q: Is everything in this document, paragraph 1 through 5 and 7 through 9, true and correct and accurate?
>
> A: Yes.
>
> Q: Do you agree the government can prove everything in here, other than paragraph six, against you beyond a reasonable doubt?
>
> A: Yes.
>
> Q: Before you signed this factual stipulation, did you have a chance to go over it in detail with your attorney?
>
> A: Yes.
>
> Q: Do you understand it?
>
> A: Yes.
>
> Doc. 4-7, Change of Plea Transcript 27:2-23.

The factual stipulation (with paragraph six stricken) set forth the details of

the conspiracy in which Duncan engaged, including maintaining and using devices to

8

manufacture fraudulent and counterfeit checks, which members of the conspiracy took to retail outlets to obtain cash or merchandise.  When these checks were negotiated, interstate wire communications resulted, and, in addition, the checks were transported in interstate commerce as part of the check clearing process.  Duncan signed the stipulation and agreed in open court that everything in the redacted document was true, could be proved against him and had been gone over in detail with his attorney.  Accordingly, Duncan's contention that the Government failed to claim any of the elements of conspiracy to commit wire fraud is without merit.

Third, as the Government points out, Duncan offers no extrinsic evidence to support his claims, which rely entirely on his criticisms of the change of plea colloquy.  As the Government notes, Duncan was represented by different counsel on appeal, and, since these claims were not raised on direct appeal, they are procedurally defaulted.  As stated above, § 2255 cannot be used as a substitute for a direct appeal or to re-litigate issues already raised on direct appeal.  *Coleman,* **318 F.3d at 760**.  As a result, Duncan cannot raise in a § 2255 motion constitutional errors not raised on direct appeal unless he can demonstrate:  "(1) both good cause for his failure to raise the claims on direct appeal and actual prejudice from the failure to raise those claims, or (2) that the district court's refusal to consider the claims would lead to a fundamental miscarriage of justice."  *McCleese v. United States,* **75 F.3d 1174, 1177-78 (7th Cir. 1996) (citations omitted)**.  Duncan offers nothing to justify his procedural default under the cause and prejudice test.  He has provided no grounds for the Court to find that refusal to consider these claims would lead

to a fundamental miscarriage of justice.  Duncan has conceded that his "overt act" argument is meritless, and, as set forth above, his argument that "reasonably foreseeable is not a conspiracy" is equally baseless.

In sum, Duncan fails to meet the *Strickland* standard and cannot prevail on his claim of ineffective assistance because he has not shown that his attorney's performance was objectively unreasonable and that he suffered prejudice as a result of this purportedly constitutionally-deficient performance.

C.    **Ineffective assistance of counsel - Count III, National Stolen Property Act ("NSPA")**

Duncan contends that Wright failed to require the Government to prove the first element of the NSPA - that he transported and/or caused to be transported in interstate commerce the securities/checks described (or "non-described") in the indictment.  He maintains that Wright failed to verify and object to the Government's theory and that the Government did not prove that he transported or caused to be transported in interstate commerce the checks described in the superseding indictment.

"An indictment is deemed sufficient if it: (1) states the elements of the offense charged; (2) fairly informs the defendant of the nature of the charge so that he may prepare a defense; and (3) enables him to plead an acquittal or conviction as a bar against future prosecutions for the same offense.  *United States v. McLeczynsky*, **296 F.3d 634, 636 (7th Cir. 2002) (citing** *Hamling v. United States,* **418 U.S. 87, 117 (1974);** *United States v. Anderson,* **280 F.3d 1121, 1124 (7th Cir. 2002))**.  "Additionally, when determining the sufficiency of an indictment, we look at the contents of the subject indictment "on a

practical basis and in [its] entirety, rather than in a hypertechnical manner." *Id.* **(citing**
*United States v. Smith,* **230 F.3d 300, 305 (7th Cir. 2000))**.

As above, Duncan offers no extrinsic evidence, merely submitting a lengthy, rambling critique of his change of plea colloquy.  Also as stated above, Duncan was represented by different counsel on appeal, and, since this claim was not raised on direct appeal, it is procedurally defaulted.

During the Court's colloquy at the change of plea hearing, Duncan admitted under oath that it was foreseeable that the counterfeit checks would cross state lines.

Q: Okay. I guess the bottom line is, do you agree that you had an agreement with one or more persons to make counterfeit checks that you knew were going to be placed into the banking channels and collected?

A: I made the checks and ID knowing they were going to cash them, correct. Obviously, I knew they would be in the banking channels.

MR. REPPERT: In my opinion, that is sufficient factual basis, Your Honor.

A: I was not saying it wasn't. I was just clarifying.

      *     *     *

Under the National Stolen Property Act, which is Count 3, 18 U.S.C. 2314, the government has to prove four things against you. The first, that you caused to be transported in interstate commerce the checks described in the indictment. Do you agree they can prove that against you beyond a reasonable doubt?

A: According to the government, they can. I mean I haven't seen the case, so I don't know. I did partly cause them to go, but, yes, foreseeable is that they would have sent through the checks through the ACH.

Q: Do you have any reason to believe they cannot prove it against you?

A: I have no reason to believe that, no.

11

Q: Second, that at that time when they were transported in interstate commerce, they were counterfeit. In other words, they were fake.

A: Correct, but again, I want to reiterate I did not transport them personally in interstate commerce.

Q: Right, but whoever did, when that was done the checks were counterfeit. Is that a fair statement?

A: Yes.

Q: And third, that at the time they were transported, whenever that was and by whomever it was, you knew that they were counterfeit checks?

A: Correct.

Q: Fourth, at the time the checks were transported you acted with unlawful or fraudulent intent. In other words, you knew they were counterfeit and it wasn't a mistake on your part, wasn't an oversight.  You knew they were counterfeit?

A: That's correct.

Q: Do you agree the government can prove it all against you beyond a reasonable doubt?

A: I just said that's correct. I think they can prove that, yes.  Doc. 4-7, Change of Plea Trans. 21:19-23:18.

The Court's colloquy was complete, and to again quote Duncan, "I made the checks and ID knowing they were going to cash them, correct. Obviously, I knew they would be in the banking channels." *Id.*, 21:23-25.  It is well established that a defendant cannot repudiate statements made at a plea colloquy through contradictory allegations in a § 2255 motion. *United States v. Suggs*, **374 F.3d 508, 520 (7th Cir. 2004) ("[T]he defendant 'must overcome the presumption of verity that attaches to [statements made at the Rule**

11 colloquy].'"").  Duncan's "representations are presumed truthful," *United States v. Loutos*, 383 F.3d 615, 619 (7th Cir. 2004), and his contradictory claims in his § 2255 petition are unsupported and without merit.  *See Suggs*, 274 F.3d at 520 (defendant's motion "directly contradicts his statements at the change of plea hearing; his motion lacks any proof for his allegations besides his own self-serving assertions.").

Lastly, even if Duncan could identify a deficiency in the plea colloquy, the United States Supreme Court foreclosed collateral relief for errors in the plea colloquy in *United States v. Timmreck*, 441 U.S. 780 (1979).  There the Court found that a formal violation of Fed.R.Crim.P. 11 "is neither constitutional nor jurisdictional." *Timmreck*, 441 U.S. at 783.

To obtain post-conviction relief for an error in the plea colloquy, a movant would have to show a complete miscarriage of justice or a proceeding "inconsistent with the rudimentary demands of fair procedure." *Id.* at 784. Duncan has not made this showing. Consequently, Duncan's ineffective assistance of counsel claim fails as to this issue because it is based on assertions that contradict his statements at the change of plea hearing.

## D.   Ineffective assistance of counsel during plea negotiations

Duncan contends that Wright failed to apprise him of the Government's plea offer to recommend that his sentence be "capped" at 84 months.  Duncan submits that Wright discussed the plea offer with him before the purported two-week deadline only to discover that he was mistaken and that the Government had rescinded the offer.  He asserts that, as a result of Wright's "sub-standard performance," he was sentenced to 96 months'

13

incarceration.

"Defendants have a constitutional right to effective assistance of counsel during plea negotiations." *Welch v. United States*, **2010 WL 1538866, \*3 (7th Cir. 2010) (citing *Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985))**. "[A] defense attorney's failure to inform a defendant about a plea agreement may constitute ineffective assistance of counsel...." *Anderson v. United States*, **2009 WL 1484595, \*2 (7th Cir. 2009) (citing *Strickland v. Washington*, 466 U.S. 668, *United States v. Golden*, 102 F.3d 936, 943 (7th Cir. 1996))**. As stated above, to prevail on a claim assistance of counsel, Duncan must establish that Wright's performance "'fell below an objective standard of reasonableness' and caused him prejudice." *Id.* **(quoting *Strickland*, 466 U.S. at 687)**.

Again, Duncan's petition suffers from the absence of any objective evidence. *See Gallo-Vasquez v. United States*, **402 F.3d 793, 798 (7th Cir. 2005)**; *Paters v. United States*, **159 F.3d 1043, 1053 (7th Cir. 1998)**. Like the petitioner in *Gallo-Vasquez*, Duncan provides no evidence that the Government offered him a deal. Duncan does not provide an affidavit, attach a copy of the proposed agreement to the motion, or offer other evidence of when or by whom the offer was made, or whether there was or was not a two-week deadline for accepting the purported offer. *See id.; see also Prewitt v. United States*, **83 F.3d 812, 819 (7th Cir.1996) (noting that defendant must do more than speculate about potential benefits that he was denied).** In short, Duncan submits no evidence other than his assertion that he was at one time offered an 84-month sentence and that he lost his opportunity to accept the deal because Wright failed to promptly report it to him. And,

14

importantly, there is no evidence that Duncan would have accepted the plea offer if tendered - particularly since it would have required him to waive his appellate rights.

Furthermore, at the change of plea and sentencing hearings, Duncan had the opportunity to bring to the Court's attention any unfulfilled promises made to him in exchange for his plea.  Had he wished to challenge the Government's alleged failure to offer (or early withdrawal of) an 84-month plea deal, he could have raised it at either of these junctures or moved to withdraw his guilty plea.  Instead he said nothing at these hearings about any breach or misrepresentation by the Government or "mistake" by his counsel.  At the change of plea hearing, the Court queried:

> Q.  My understanding you want to change your plea from not guilty to guilty to the offenses in the indictment.  Is that correct?
>
> A.  Correct.
>
> Q.  I want to make certain that your decision to do that is voluntary and nobody pressured you, nobody made any promises to you, that your decision is fully informed and you know all of the consequences, okay?
>
> A.  Okay.
> *       *       *
> Q. Has anyone, including your attorney, family, friends, people from whom you seek advice, made any promises or assurances or guarantees of any kind to get you to plead guilty here today?
>
> A. No - other than what Mr. Reppert told me about not seeking certain -- No, other than the factual stipulation.  That is it.  Doc. 4-7, COP Trans., 3:17-25; 12:20-13:1.

So, Duncan passed up the opportunity to raise the issue of the plea offer with

the Court when asked.  Moreover, if he had done so, the only option he had was to refuse to plead guilty and go to trial because neither the Government nor the Court was bound to such an offer at that time. "A plea bargain standing alone is without constitutional significance; in itself it is a mere executory agreement which, until embodied in the judgment of a court, does not deprive an accused of liberty or any other constitutionally protected interest." *Mabry v. Johnson,* **467 U.S. 504, 507 (1984) (holding that where the Government withdrew a more favorable plea bargain when defendant sought to accept it, defendant did not have any due process right to have first offer specifically enforced unless and until it was accepted by the trial court)**.  The Court is not a party to any plea agreement and could well have rejected a recommendation of an 84-month term of imprisonment had it been offered. *Paters*, **13 Fed.Appx. at 399 ("likelihood of the district court rejecting the proposed plea agreement is another factor suggesting that [defendant] has not demonstrated prejudice.")**.

In sum, Duncan has failed to meet either prong of the *Strickland* test.  He has not proven that any acts or omissions by Wright are outside the scope of reasonable legal assistance, and he has failed to demonstrate a reasonable probability that, *but for counsel's errors*, the result of the proceeding would have been different.

E.     <u>**Whether Duncan was treated unfairly relative to his co-conspirators**</u>

Duncan's claims as to this issue fall within three general categories: (1) that the Court relied more heavily upon the statements of the five cooperating co-conspirators and less on the statements of "this lone petitioner"; (2) that the prosecutors in the

16

underlying criminal case (AUSA Suzanne Garrison and AUSA Bruce Reppert) acted out of personal animosity, and their conduct bordered on prosecutorial misconduct; and (3) co-conspirators, such as Calien McPike, were more culpable than he was.

First, it is well within the prosecutors' discretion to assess the evidence and determine which member of a conspiracy played a leadership role in the conspiracy. Ultimately, Duncan conceded the applicability of a four-level increase because he was the organizer or leader of a conspiracy of five or more participants. Doc. 4-10, Sentencing Trans. 117:1-118:9.

Furthermore, Duncan brought his allegations regarding the co-conspirators' statements and the four-level enhancement to the Court's attention in an 18-page letter to the Court detailing his version of the facts.

At sentencing, Duncan was sworn and his letter was admitted into evidence without objection by the Government. Doc. 4-8, Sentencing Trans. 7:14-20. The Court distilled the letter as contending that McPike was the ringleader in the conspiracy and that Duncan should not get the four-point enhancement as ringleader. *Id.*, 7:3-6. Duncan stated that he asked co-conspirator Jeanette Thomas to sign an affidavit he had prepared attesting that the Government was "getting her to sign statements that were not true." *Id.*, 8:22-9:4. Duncan had no draft of the affidavit with him; he also conceded that Thomas had never provided him with one. *Id.*, 10:4-6;12:16-18. Duncan testified that he believed he had been treated unfairly because McPike got a "great deal," but he "didn't get any deal." *Id.*, 25:19-22. He further testified that McPike financed the operation and asked him if he could make

17

the checks.  *Id.*, 33:24-34:1.  Duncan stated that Vince Breyfogle conspired with McPike to placed the blame for the conspiracy on him.  *Id*. 35:14-36:6.  Ultimately, Duncan asserted that Postal Inspector Dowd gave information to a cooperating witness in order to hurt him - to get as much on him as they could and give him as much time as they could.  *Id*. 38:2-13.  He later clarified that he did not believe that Dowd, AUSA Garrison and AUSA Reppert decided to "get" him but that they relied on what McPike and others "set up" against him.  *Id.*, 67:5-9.

Rather than this matter being "touched upon briefly" at Duncan's sentencing hearing, the undersigned Judge not only read the 18-page letter twice but also listened to Duncan testify on these issues in examination and cross-examination that runs over 100 pages of transcript (Docs. 4-8 to 4-10, Sent. Tr. 5:20-114:6).  Duncan was afforded every opportunity to explain his role in the conspiracy relative to McPike and the other co-conspirators.  When the Court reconvened after a recess, Wright announced that Duncan had decided to concede the applicability of the four-point leadership adjustment. Sent. Tr. 116:4-8.  Upon the Court's inquiry, Duncan stated that Wright's statement was true and that he understood that this concession would significantly increase his guidelines range. *Id.*, 116:9-13.  The Court then advised Duncan that Wright's advice to accept responsibility had probably saved Duncan a significant increase in his points because additional testimony and listening to a tape on this issue could have led to a finding by a preponderance of the evidence that Duncan had obstructed justice.  *Id*. 124:15-125:7.  That finding would have caused Duncan to lose 3 points for acceptance of responsibility and to

18

add an additional 2 points for obstruction.  *Id.*, 125:1-7.

In sum, the matter of which Duncan complains was explored very thoroughly by the Court, and nothing Duncan raises in this petition implicates his constitutional rights and creates a cognizable claim under § 2255.

### F.    Ineffective assistance of counsel - forfeiture and restitution

The Court addresses these two claims together because both fail for the same reason:  they are not cognizable under § 2255, which, by its plain language, is limited to issues of custody and liberty.  ***Virsnieks v. Smith,* 521 F.3d 707, 722 (7th Cir. 2008) ("Section 2255 affords relief to prisoners who are 'in custody' and who 'claim ... the right to be released.") (quoting 28 U.S.C. § 2255)**.  Consequently, relief under § 2255 is available only if the petitioner has raised an issue that impacts his custodial sentence in this manner.  ***Barnickel v. United States,* 113 F.3d 704, 706 (7th Cir.1997) (Section 2255 "is not available to challenge an order of restitution imposed as part of a criminal sentence" because "the relief requested in such a case [does] not qualify as a 'right to be released' ") (citing *Smullen v. United States,* 94 F.3d 20 (1st Cir.1996))**.

In ***United States v. Ramsey,* 106 F.3d 404, 1997 WL 14152 (7th Cir. Jan. 9, 1997) (unpublished opinion)**, the Seventh Circuit explained that a petitioner cannot seek relief from a forfeiture order under § 2255:

> We previously have held that neither 28 U.S.C. § 2254 nor § 2255 authorizes a federal court to grant habeas corpus relief from monetary penalties in the form of fines. *United States v. Keane,* 852 F.2d 199 (7th Cir.1988), *cert. denied,* 490 U.S. 1084 (1989) (habeas corpus relief not available under § 2255 for

19

remuneration of fines); *Hanson v. Circuit Court,* 591 F.2d 404, 407 (7th Cir.), *cert. denied,* 444 U.S. 907 (1979) (habeas corpus relief not available under § 2254 for remuneration of fines). We see no reason that the result should differ in cases in which the petitioner seeks relief from monetary penalties in the form of forfeiture of property, rather than in the form of fines.

*Ramsey*,  **106 F.3d 404, 1997 WL 14152, \*1**.

Section 2255's "limitation on who may seek release from federal custody also implies a limitation on the claims they may assert to obtain a release." *Viersnieks*, **521 F.3d at 721 (quoting** *United States v. Segler*, **37 F.3d 1131, 1137 (5th Cir. 1994)**. "Although the petitioner was a federal prisoner, thus 'bring[ing] *him* clearly within the class of petitioners described in § 2255 ... his ineffective assistance of counsel claim relating to his fine raises the question whether *his claim* arises under § 2255.'" *Id.* **(quoting** *Segler* **at** *id.* **(emphasis in original)**.

In other words, the harm asserted must relate to the inmate's *custody* and not to any form of monetary penalty.  *See Viersnieks*, **521 F.3d at 722 (quoting** *Kaminski v. United States*, **339 F.3d 84, 89 (2d Cir. 2003) (§ 2255 "lies to allow attacks on wrongful custodies.")**.  For these reasons, Duncan's claims regarding the forfeiture or abandonment of his property and restitution must be dismissed because they are not cognizable under § 2255.

### III.   Conclusion

Accordingly, the Court **DENIES** Patrick Duncan's petition to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255.  This case is closed.

IT IS SO ORDERED.

DATED this 3rd day of August, 2010


s/Michael J. Reagan
MICHAEL J. REAGAN
United States District Judge